Arkay Drug Co. and Merit Drug Co. v. Commissioner.
Arkay Drug Co. v. Commissioner
Dockets Nos. 1581 and 2055.
United States Tax Court
1944 Tax Ct. Memo LEXIS 51; 3 T.C.M. (CCH) 1194; T.C.M. (RIA) 44364; November 7, 1944
*51 Charles Hockhauser, Esq., 152 W. 42nd St., New York, N. Y., for the petitioners. J. Richard Riggles, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in the income and excess-profits taxes of the petitioners for the fiscal years indicated: Arkay Drug Co.
Excess-Profits
Fiscal yr. ended
Income Tax
Tax
Delinquency Pen.
January 31, 1940
$1,064.06
$729.21
January 31, 1941
87.02
Merit Drug Co.
October 31, 1939
$1,627.74
$1,271.14
$11.93
October 31, 1940
79.53
The petitioners challenge the correctness of the respondent's determination in four particulars: That there was includible in their respective taxable incomes interest on promissory notes accrued during each tax year; that the notes were worth full face value in the year received; that compensation paid an officer of the corporation after sale of the corporate assets was not an allowable deduction; and that they are not entitled to report their gain from the sale of their assets on the installment basis. The proceedings were consolidated for hearing. Findings of Fact The petitioners are corporations organized under *52 the laws of New York. They filed their several corporation income and excess-profits tax returns involved here with the collectors of internal revenue for the third and fourteenth districts of New York, on an accrual basis. Their books of account were also kept on an accrual basis. Both petitioners were organized by Louis P. Kotok, who owned all their capital stock and who managed the businesses and directed their policies. Each corporation was organized for the purpose of conducting and, prior to April 24, 1939, did conduct a drug store in New York City. Petitioner, Arkay Drug Co., Inc., was incorporated in 1934; and petitioner, Merit Drug Co., Inc., was incorporated in 1935. Because of Kotok's failing health it was decided to sell the two drug stores owned by petitioners, and on April 24, 1939, Kotok executed a bill of sale reciting, in essence, that the Ar-Kay Drug Co., Inc., "* * * for and in consideration of the sum of Twenty Five Thousand * * * Dollars * * * has bargained and sold * * * the drug store and drug business as a going concern together with all and singular the fixtures, chattels, goods, wares and merchandise now contained in or connected with the drug store located *53 at 130 Dyckman Street, in the Borough of Manhattan, City of New York, as more particularly enumerated in the schedule hereto annexed which is made a part hereof, together with the goodwill thereof, and all trade and business and trade name in and to and connected with the said drug store, including the name Ar-Kay Drug Co., except however Ko-dine." There follows the usual warranty of title in the seller, and a covenant not to engage in a competing business within a specified area, and a statement of the agreement with reference to unpaid bills. Then appears this provision: "The above consideration was paid as follows: "The sum of $10,000 in cash for the goods, wares, stock and merchandise contained in the said store; the sum of $2,000 for the chattels, machinery and fixtures and the balance of $13,000 for the leasehold interest, as evidenced by the sub-lease on the aforementioned premises, and the good will of the business; the latter two items constituting the purchase money mortgage of $15,000." Physical inventory and adjustments made in the closing of the sale increased the amount of consideration paid by $250. A bill of sale identical in form and language, except for the *54 different name, address and amount of consideration, was executed on the same date for the drug store owned by Merit Drug Co., Inc. At the time of the sale, Ar-Kay Drug Co., Inc. received $10,000 in cash, and 69 promissory notes, of which 67 were in the face amount of $210, one was for $180, and one note was for $1,000. The note for $1,000 matured and was paid, including interest, on October 24, 1939. The others matured at the rate of one each month beginning May 24, 1939, and all provided for interest at the rate of six percent per annum. These notes were secured by a chattel mortgage upon the fixtures. Nine of the notes for $210 matured and were paid in the fiscal year ended January 31, 1940. The consideration recited by the bill of sale for the store owned by petitioner Merit Drug Co., Inc., was $30,000. Physical inventory, and adjustments made in the closing of the transaction resulted in an increase in the consideration paid to the extent of $250. The sum of $15,000 was paid in cash, and sixty-nine promissory notes of a total face value of $15,250, 67 of which were in the face amount of $210 each, and one of which was for $180, maturing monthly beginning May 24, 1939, and one *55 was in the face amount of $1,000 which matured and was paid October 24, 1939. The notes provided for 6 percent interest payable as each note became due. The notes were secured by a chattel mortgage upon the fixtures listed in the schedule which was attached to the bill of sale. Notes of the total face amount of $2,260 were paid, with interest, during the fiscal year ended October 31, 1939. Interest on notes held by petitioner Arkay Drug Co., Inc., accrued in the amounts of $548.68 and $668.94 for the fiscal years ended January 31, 1940 and January 31, 1941, respectively. The notes received by Arkay Drug Co. had a fair market value of $13,725. Interest on notes held by petitioner Merit Drug Co., Inc., accrued during its fiscal years ended October 31, 1939, and October 31, 1940, in the respective amounts of $357.82 and $706.74. The notes when received by Merit Drug Co., Inc., had a fair market value of $13,725. Louis P. Kotok received from the petitioner Merit Drug Co., Inc., the following amounts as compensation for his service in the fiscal years set out below: 1936
$ 236.64
1937
1,486.74
1938
1,424.39
He received from petitioner Arkay Drug Co., Inc., the following *56 compensation during the years indicated: 1935
$2,340.00
1936
2,340.00
1937
2,278.73
1938
2,290.34
1939
2,340.00 During these years, Kotok was working 14 or more hours per day, devoting all his energy to the establishment, and expansion of these stores, which, under his management, did an annual gross business of around $100,000 each. The salaries drawn by Kotok were inadequate to compensate him for the time and effort expended by him in the conduct of the petitioners' businesses. For the fiscal year ended October 31, 1939, which included several months after the sales took place, petitioner Merit Drug Co., Inc., paid Kotok as compensation the sum of $5,888.66, and for the fiscal year ended October 31, 1940, the sum of $1,800. For the fiscal year ended January 31, 1940, petitioner Arkay Drug Co., Inc., paid Kotok the sum of $1,089.09, and for the fiscal year ended January 31, 1941, the sum of $1,800. These amounts represented reasonable compensation for Kotok's services for past years when his compensation had been inadequate. Opinion KERN, Judge: The first question for decision is whether petitioners are entitled in reporting the profit resulting from the sales *57 detailed in our findings to the benefit of the provisions of section 44 (b) of the Revenue Act of 1938. It is recognized by both parties that this section is applicable if the initial payments did not exceed 30 percent of the selling price. The petitioner in each proceeding contends that it sold the merchandise in its drug store for a stated consideration, paid in cash, and sold the fixtures, lease, etc., to the same purchaser for a stipulated price, of which less than 30 percent was received as an initial payment, the balance evidenced by promissory notes secured by a chattel mortgage. It is the respondent's contention as to each that there was but a single sale of the drug store as a going business, including merchandise, fixtures, lease, good will, and that the amount received in cash was greatly in excess of 30 percent of the selling price, so that the provisions of section 44 (b) are not available to the petitioners. The facts set forth in our findings sustain the respondent's position. A single bill of sale covered the entire transaction in each instance, and the consideration set forth therein was the total consideration for the sale of the entire store. The same purchaser, *58 in both instances, bought both merchandise and fixtures, and the bill of sale specifies that the store is being purchased as a going concern. We do not think that the fact that the bill of sale later particularizes as to the allocation of the consideration agreed on between the several classes of property sold indicates that it was the intention of the parties that several separate and distinct sales were being negotiated. The fair and reasonable import of the entire document is that a single sale was made of the entire store. This being so, since the petitioner Arkay Drug Co., Inc., received $10,000 in cash of the total consideration of $25,250, and petitioner Merit Drug Co., Inc., received $15,000 in cash of the total consideration of $30,250, it is obvious that the requirements of section 44 (b) are not met by the facts present here. The petitioner Arkay Drug Co. next contends that the promissory notes received by it, in the face amount of $14,250 had a fair market value as of April 24, 1939, of $6,982; and petitioner Merit Drug Co. contends the fair market value, on the date of sale, of the notes in the face amount of $14,250 received by it was $9,880. These estimates omit consideration *59 of the separate notes for $1,000 paid in 1939. The respondent urges that the entire series were worth face value. Their value in the tax year is, of course, a question of fact and if they were worth less than full face value, the petitioners have the burden of establishing that fact. They offered expert testimony of one witness of long experience in dealing in and financing drug stores, who fixed the values now contended for by petitioners. However, we are unable to follow his reasoning with full approval. The notes were secured by a chattel mortgage on property which both parties to the sale had valued at an amount equal to the face value of the notes. The notes bore six percent interest, and all have been paid in full, with interest, as they matured. The witness testified that a minimum discount would have been ten percent, and we believe a fair market value of these notes was at least 90 percent of their face value on the date of sale. The next point of contention concerns the accruability of the interest on the notes. The interest provided for was 6 percent per annum, collectible at the maturity of the note. The petitioners kept their books and filed their tax returns on an accrual *60 basis. There is no evidence of any serious doubt as to the collectibility of either principal or interest of the notes. Nothing in the record questions the solvency of the debtors or the adequacy of the security. In the absence of any substantial reason to question its collectibility, we must sustain the respondent's contention that the interest must be reported for taxation as it accrues. ; . The final question is whether petitioners are entitled to deduct amounts paid after the sale of their assets to Louis Kotok, the principal officer and manager of both, as compensation for his services rendered chiefly during the period of their activity prior to the sales. The stores were sold on April 24, 1939, and petitioner Arkay Drug Co. paid and seeks to deduct from its taxable income for the fiscal year ended January 31, 1940, the sum of $1,089.09, and for the fiscal year ended January 31, 1941, the sum of $1,800. Petitioner Merit Drug Co. paid, and seeks to deduct, the amount so paid by it during the fiscal year ended October 31, 1939, the sum *61 of $5,888.66, and during the fiscal year ended October 31, 1940, the sum of $1,800. The corporation engaged in no active business after the sale of the stores. As we have shown in our findings, Kotok, who owned all the corporate stock of both petitioners, and who established and conducted the business operated by each, drew very small salaries from each during the early years of its existence, although he worked extremely long and arduous hours. He did this in order to have larger amounts of the earnings available for reinvestment in and expansion of the stores. He believed they would eventually develop into very profitable businesses, and that he could best afford to wait for more adequate compensation until he had succeeded in developing them to that extent. The payments made to Kotok by each petitioner during the tax years were justified as reasonable compensation for past services, and, as such, are deductible. . Decision will be entered under Rule 50.